## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTERNATIONAL REFUGEE ASSISTANCE PROJECT, INC., <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES DEPARTMENT OF STATE, <br><br> Defendant. | Civil Action No. _____ <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATION OF THE FREEDOM OF INFORMATION ACT, 5 U.S.C § 552 et seq.** |

## <u>INTRODUCTION</u>

1.     Plaintiff, the International Refugee Project, Inc. ("IRAP"), a nonprofit legal services organization, brings this action under the Freedom of Information Act ("FOIA") to compel the production of records pertaining to the Special Immigrant Visa ("SIV") programs for Afghan and Iraqi nationals whose lives are at risk because they were employed by or on behalf of the U.S. government. The SIV program is administered by the Defendant, the U.S. Department of State ("State Department"). In response to Plaintiff's two FOIA requests—the first of which was submitted more than three years ago—the State Department has produced almost no relevant information.

2.     IRAP is a nonprofit legal services organization and seeks these records in furtherance of its direct representation of Afghan and Iraqi nationals applying to the SIV program. In particular, the State Department makes critical determinations about an applicant's employment through a process called Chief of Mission ("COM") approval, which is a required first step in obtaining a Special Immigrant Visa. IRAP seeks records relating to this process because there is

little public information about how the State Department and Chief of Mission evaluate applicants' employment and adjudicate applications for COM approval.

3.      Plaintiff accordingly brings this action pursuant to the FOIA for declaratory and injunctive relief, seeking to compel the disclosure and release of urgently-needed agency records that Defendant has improperly withheld.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to the FOIA, 5 U.S.C. § 552(a)(4)(B), and 28 U.S.C. § 1331.

5.      Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(e) and 1402(a)(2), as Plaintiff IRAP's principal place of business is in the Southern District of New York.

## PARTIES

6.      Plaintiff IRAP is a non-profit 501(c)(3) organization that organizes law students and lawyers to develop and enforce the legal and human rights of refugees and displaced persons, including Afghan and Iraqi allies who face ongoing threats of violence because of their service to the U.S. government. IRAP utilizes media and systemic policy advocacy, direct legal aid, and impact litigation to serve the world's most persecuted individuals and empower the next generation of human rights leaders.

7.      Defendant, the State Department, is a federal agency in the Executive Branch of the United States Government pursuant to 5 U.S.C. §§ 551(1) and 552(f). It is charged with carrying out U.S. foreign policy and international relations and, as such, oversees and administers the Afghan and Iraqi SIV programs, including the process of granting COM approval. Upon information and belief, the State Department has possession and control of the records sought in the Requests.

## STATEMENT OF FACTS

8.      The State Department administers the Special Immigrant Visa programs for Iraqi and Afghan nationals who served the United States government in various capacities in Iraq and Afghanistan.[1]  These allies are critical to the operational success of U.S. troops and government officials whose missions often depend on overcoming or bridging significant cultural and linguistic barriers.  Congress created these SIV programs in recognition of our allies' faithful service to the United States during our military and diplomatic efforts in Iraq and Afghanistan.

9.      As a result of their service to the United States, these allies and their families face ongoing threats of violence from local militant extremist groups who seek to retaliate against them. The Iraqi and Afghan SIV programs are intended to provide an avenue for Iraqi and Afghan nationals to escape violent persecution by creating a pathway to U.S. resident status, and ultimately, citizenship, in recognition of their faithful service to the United States.

10.     Currently, the SIV application process consists of no fewer than 14 distinct steps, each taking time for review and processing.  Although Congress has enacted laws expressly for the purpose of expediting the State Department's review, the average applicant still awaits processing for years, all the while living under the threat of harm to themselves and their families.

11.      To apply for a Special Immigrant Visa, applicants must first submit detailed information about their qualifying employment to the Chief of Mission in order to obtain COM approval.  The Chief of Mission in the applicable country then determines whether the applicant's employment by or on behalf of the U.S. government, military, or coalition forces meets the statutory eligibility requirements.  The process by which COM makes this determination remains

---

[1] The deadline to apply to the Iraqi SIV program was September 30, 2014.  As of now, the Iraqi SIV program will end once all pending visas are issued or all pending applications are adjudicated.  The Afghan SIV program is ongoing and open to new applications as of the filing of this Complaint.

unclear.  Because an applicant's employment by or on behalf of the United States government is the crux of the SIV program, obtaining COM approval is crucial to receive a visa under this program.  As noted in the State Department's most recent report on the Afghan SIV program, this step alone takes nearly 300 days to complete on average, and there are over 8,000 applications pending this determination.[2]

12.     Congress has repeatedly amended the authorizing statutes for the SIV programs to change the employment eligibility requirements, affecting who can apply for and receive SIVs.

13.     For instance, the National Defense Authorization Act for Fiscal Year 2017 amended the Afghan Allies Protection Act to require that SIV applicants demonstrate that they had performed "sensitive and trusted activities for the United States Government in Afghanistan." Upon information and belief, the State Department has not provided guidance to SIV applicants, or to the public, regarding the application of this "sensitive and trusted" standard.

14.     Adding further confusion, the National Defense Authorization Act for Fiscal Year 2020 amended the eligibility criteria yet again, returning to the preexisting standard that applicants generally need only have been employed "by, or on behalf of the United States government in Afghanistan."  Thus, now, applicants who served the U.S. government need not have performed "sensitive and trusted activities" to receive an SIV.  But the amendment retained the "sensitive and trusted activities" requirement for applicants who had been employed by the International Security Assistance Force (or successor mission).

---

[2] Available at https://travel.state.gov/content/dam/visas/SIVs/Q4-Afghan-SIV-Report-October-2019.pdf.

15.     Notwithstanding the amendment, guidance to applicants available on the State Department's website as of this Complaint continues to make reference to the "sensitive and trusted" requirement, even for those applicants who served the U.S. government.[3]

16.     On information and belief, the State Department has denied COM applications of SIV applicants who worked on behalf of the U.S. government on the basis that the applicant did not perform "sensitive and trusted" activities for the U.S. government even after Congress repealed the "sensitive and trusted" requirement.

17.     In order to clarify the State Department's opaque SIV processes and further its mission of providing assistance to Afghan and Iraqi allies, IRAP requested numerous agency records related to the SIV program.  These records include, among other things, standard operating practices, handbooks, and guidance relating to the COM approval process, and the State Department's application and guidance regarding the evolving statutory frameworks governing SIV applications.  These records are critical to IRAP's work providing direct legal representation and up-to-date *pro se* guidance to SIV applicants in the COM approval process.

18.     Dissemination of information is an integral component of IRAP's mission.  IRAP routinely engages in gathering information from its legal and policy work, including through the FOIA, analyzing the information, and distributing it.  IRAP distributes *pro se* guidance directly to individuals requesting assistance and publicly maintains a Legal Information website with resources for individuals navigating the complicated SIV, immigration, and refugee resettlement processes.[4]  IRAP has published a number of policy reports to the public on refugee resettlement issues and maintains "Know Your Rights" and other educational materials on its website.  It

---

[3] Available at https://travel.state.gov/content/travel/en/us-visas/immigrate/special-immg-visa-afghans-employed-us-gov.html.
[4] Available at http://iraplegalinfo.org/en.

routinely releases press releases and publishes a blog on its work and on issues relating to refugee policy.  It has a monthly newsletter that reaches over 25,000 individuals.  It maintains a Facebook account with over 47,000 followers and a Twitter account with over 18,000 followers.  IRAP also routinely collects and distributes resources and up-to-date information to its network of 30 law school chapters and 80 law firms with which it works.

19.     IRAP uses materials such as the requested records in order to understand the current state of refugee and visa processing.  Access to the training materials, manuals, and policies governing the evaluation of refugee applications forms the foundation of IRAP's policy advocacy, direct client representation, and impact litigation.

20.     As described below, from May 2017 to December 2019, IRAP submitted two distinct requests under the FOIA to the State Department.

### The First FOIA Request

21.     On May 23, 2017, IRAP sent its initial FOIA request to the State Department (the "First FOIA Request").[5]

22.     IRAP's First FOIA Request sought all documents and information pertaining to the COM process for the SIV programs for Iraqi and Afghan nationals under the National Defense Authorization Act for Fiscal Year 2006, as amended; the National Defense Authorization Act of 2008, as amended; and the Afghan Allies Protection Act of 2009 as enacted within the Omnibus Appropriations Act 2009, as amended.  IRAP's request explained that it was particularly interested in any rules of procedure, statements of policy, staff manuals, or instructions to State Department staff concerning the COM process.

---

[5] A copy of which is attached hereto as Exhibit A.

23.     By letter dated June 12, 2017, the State Department confirmed receipt of the First

FOIA Request and indicated it would begin processing this request under Case Control Number

F-2017-12390.  The State Department also denied IRAP's petition for a fee waiver.

24.     By letter dated July 20, 2017, the State Department indicated that the information

sought in the First FOIA Request was available in the Foreign Affairs Manual.

25.     However, most of the information requested by IRAP is not available in that

manual.  The Foreign Affairs Manual provides only a cursory recitation of governing statutes and

regulations.  For instance, it does not contain statements on general policy or staff manuals, as

specifically sought in the First FOIA Request.

26.     The State Department asserted that any material requested by IRAP not available

in the Foreign Affairs Manual was exempt from disclosure pursuant to FOIA exemption (b)(7)(e),

which prevents the release of records or information "compiled for law enforcement purposes" to

the extent that disclosure of such information "would disclose techniques and procedures for law

enforcement investigations or prosecutions, or would disclose guidelines for law enforcement

investigations or prosecutions if such disclosure could reasonably be expected to risk

circumvention of the law."  5 U.S.C. § 552(b)(7)(e).

27.     By letter dated September 7, 2017, IRAP appealed the decision outlined in the State

Department's July 20, 2017 letter. By letter dated September 15, 2017, the DOS confirmed receipt

of IRAP's appeal.

28.     The State Department failed to make a determination on IRAP's appeal within the

statutorily prescribed twenty business days from receipt and, in fact, did not respond at all for

nearly two months.  By letter dated December 12, 2017, IRAP inquired as to the status of its

outstanding appeals and asked the State Department for information concerning the status of the First FOIA Request.

29.     By letter dated December 20, 2017, the State Department confirmed receipt of IRAP's follow-up letter, but noted that it had a significant backlog of FOIA requests.  The State Department acknowledged that IRAP had exhausted its administrative remedies and acknowledged IRAP's ability to pursue judicial review.

30.     One month later, by letter dated January 26, 2018, the State Department released one limited production of 34 documents—consisting primarily of brief email correspondence concerning the Iraqi SIV application process with barely any mention of the Afghan SIV application process.  Significant portions of the First FOIA Request remain unanswered.  Although IRAP requested information concerning both the Iraqi and Afghan COM processes, the State Department limited its production to documents pertaining to the Iraqi program, even though the Chief of Mission has been exclusively accepting Afghan COM applications since of September 30, 2014, and other stages of the application process that were not subjects of the First FOIA Request.  These deficiencies do not satisfy the obligations imposed by the FOIA and impede IRAP's mission to assist applicants who have risked their lives in service to the United States and to inform the public about the implementation of these SIV programs.

31.     In light of these deficiencies, on March 9, 2018, IRAP appealed the State Department's partial production. IRAP's appeal sought the release of information pertaining to the Afghan COM process and details as to how the State Department handled four series of legislative changes to the Afghan SIV program.  IRAP reiterated its request that the State Department provide any rules of procedure, statements of general policy, or instructions to staff regarding the COM approval process.

32.     To date, the State Department has not responded to IRAP's March 9, 2018 appeal.

33.     IRAP is deemed to have exhausted its administrative remedies with respect to the First FOIA Request.

*The Second FOIA Request*

34.     IRAP sent its second FOIA request to the State Department on December 13, 2019 (the "Second FOIA Request").[6]  The Second FOIA Request sought records, including guidance, standard operating procedures, and instructions, pertaining to the COM phase of the SIV approval process, as well as records pertaining to legislative changes to the Afghan SIV program, as originally sought in the First FOIA Request and subsequent appeal dated March 9, 2018.  IRAP sought a waiver of search fees and expedited processing in connection with the Second FOIA Request.

35.     By letter dated December 23, 2019, the State Department acknowledged its receipt of the Second FOIA Request.  The State Department denied IRAP's request for a fee waiver and expedited processing, and determined that the Second FOIA Request fell within the definition of "unusual circumstances" under the FOIA.  As such, the State Department assigned IRAP's request to its "complex" track, which allows the agency to extend the time limit for its response.  The State Department did not explain when it anticipated processing IRAP's request, stating only that it would process the request "as soon as possible."  The State Department assigned Case Control Number F-2020-02351 to the Second FOIA Request.

36.     By letter dated March 18, 2020, IRAP appealed the State Department's decision to deny a fee waiver and expedited processing.  The State Department has yet to respond to IRAP's appeal or to produce any records.

---

[6] A copy of which is attached hereto as Exhibit B.

37.     To date, the State Department has not responded in any other way to the Second FOIA Request.

38.     IRAP is deemed to have exhausted its administrative remedies with respect to the Second FOIA Request.

## CLAIM FOR RELIEF

39.     Plaintiff has a legal right under the FOIA to obtain the specific records sought in the Requests, and Defendant's failure to promptly make the requested records available to Plaintiff has no legal basis.

40.     Defendant's failure to conduct a reasonable search for the records responsive to the Requests and to promptly make them available violates the FOIA, 5 U.S.C. § 552(a)(3), and applicable regulations promulgated thereunder, 22 C.F.R. § 171.11.

41.     Defendant's failure to make a timely determination on the Requests violates the FOIA, 5 U.S.C. § 552(a)(6), and applicable regulations promulgated thereunder, 22 C.F.R. § 171.11(e).

42.     Defendant's continued failure to respond to IRAP's appeals regarding the Requests violates the FOIA, 5 U.S.C. § 552(a)(6)(A)(ii), and applicable regulations promulgated thereunder, 22 C.F.R. §171.11(g).

43.     On information and belief, Defendant currently has possession, custody, or control of the requested records.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(a)     Declare that Defendant violated the FOIA by unlawfully withholding the requested records;

(b)     Order Defendant to conduct a reasonable search for the requested records

and to disclose them to Plaintiff in their entireties as soon as practicable,

including granting Plaintiff's request for a fee waiver and expedited

processing of the Second FOIA Request as provided by 5 U.S.C. §§

552(a)(4)(A)(iii), (a)(6)(E)(iii);

(c)     Review any and all of Defendant's decisions to redact or withhold

information in the requested records as exempt from disclosure;

(d)     Award Plaintiff's costs and reasonable attorneys' fees in this action as

provided by 5 U.S.C. § 552(a)(4)(E); and

(e)     Grant other such relief as the Court may deem just and proper.

Dated: New York, New York
        June 19, 2020

Respectfully submitted,

**WEIL, GOTSHAL & MANGES LLP**

By: /s/ Evert J. Christensen, Jr.
        EVERT J. CHRISTENSEN, Jr.
        VICTOR S. LEUNG
        ANNA GORDAN
        JONATHAN G. D'ERRICO
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
Evert.Christensen@weil.com
Victor.Leung@weil.com
Anna.Gordan@weil.com
Jonathan.Derrico@weil.com

*Attorneys for Plaintiff International Refugee*
*Assistance Project, Inc.*